ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

2009 NOV 30 PM 1:53

| | | |
|---|---|---|
| MICHAEL L. LARKIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 309-024 |
| | ) | |
| FNU LAWRENCE, Deputy Warden; FNU JEFFERSON, Captain; ANTHONY WASHINGTON, Warden; FNU BURTON, Officer; BRUCE CHATMAN, Warden; MARTY ALLEN, Deputy Warden; JANE DOE, Autry State Prison Librarian; and BRIAN OWENS, Commissioner of Corrections, in their individual and official capacities, | ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate at Georgia State Prison in Reidsville, Georgia, commenced the above-captioned case pursuant to 42 U.S.C. § 1983.[1] Because Plaintiff's complaint was filed *in forma pauperis*, it must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e) & 1915A.

---

[1] At the time of the events forming the basis of the complaint, Plaintiff was incarcerated at Johnson State Prison ("JSP") and Autry State Prison ("ASP").

Accordingly, on June 10, 2009, the Court reviewed Plaintiff's complaint in conformity with the *in forma pauperis* statute. Because of pleading deficiencies, Plaintiff was directed to file an amended complaint. (Doc. no. 11). However, rather than file an amended complaint pursuant to the Court's June 10, 2009 Order, Plaintiff filed a "Motion to Add Defendants" (doc. no. 14), and explained in his objections to the June 10, 2009 Report and Recommendation on his motions for injunctive relief, that he should not be required to amend his complaint (doc. no. 19). Neither document complied with the Court's June 10, 2009 Order directing Plaintiff to file an amended complaint. Thus, the Court provided Plaintiff with ten additional days to amend his complaint in accordance with the Court's Order of June 10, 2009. (Doc. no. 21).

Again, rather than comply with the Court's Order, Plaintiff filed a supplemental motion in support of his motion for a preliminary injunction, and filed a notice of appeal concerning the presiding District Judge's order denying Plaintiff's motion for preliminary injunction. (Doc. nos. 22, 23). Thereafter, Plaintiff finally submitted his proposed amended complaint and also filed a second notice of appeal.[2] (Doc. nos. 28, 29). Now that Plaintiff has submitted an amended complaint and a supplement to his amended complaint,[3] (doc. nos. 28, 30), the Court will screen these documents.[4]

---

[2] Plaintiff's second notice of appeal addresses the Court's September 11, 2009 Order denying Plaintiff's motion to add defendants, but granting Plaintiff an extension of time in which to file his amended complaint. (Doc. no. 29).

[3] The supplement to his amended complaint addresses Plaintiff's claims arising at ASP and will be addressed *infra*.

[4] Given that Plaintiff has filed an interlocutory appeal regarding the denial of his request for a preliminary injunction, the Court must address whether it retains jurisdiction

I. **SCREENING THE COMPLAINT**

*Liberally* construing Plaintiff's amended complaint, the Court finds the following. Plaintiff names the following Defendants in their individual and official capacities: (1) FNU Lawrence, Deputy Warden at JSP, (2) FNU Jefferson, Captain at JSP, (3) Anthony Washington, Warden of JSP, (4) FNU Burton, Officer at JSP, (5) Bruce Chatman, Warden of ASP, (6) Marty Allen, Deputy Warden at ASP, (7) Jane Doe, Librarian as ASP, and (8) Brian Owens, the Commissioner of the Georgia Department of Corrections ("GDOC"). (Doc. no. 28, pp. 1, 4). Plaintiff raises a variety of claims against multiple Defendants arising from various events occurring at different prison facilities. Plaintiff does not raise these claims or state these allegations in any particular order; thus, the Court will address the claims arising at JSP first, and then address Plaintiff's claims arising at ASP.

First, Plaintiff alleges generally that Defendants Washington and Lawrence denied him access to the law library for approximately seven months, as well as denied him any

---

over Plaintiff's complaint. It does. See, e.g. State of Alabama v. Envtl. Prot. Agency, 871 F.2d 1548, 1553-54 (11th Cir. 1989) (holding district court retained jurisdiction to grant summary judgment and to dismiss suit despite pending interlocutory appeal of district court's issuance of preliminary injunction) (citing United States v. White, 846 F.2d 678, 693 n.23 (11th Cir. 1988) (explaining that pending interlocutory appeal did not divest district court of jurisdiction over motion to dismiss indictment)); Hamer v. Campbell 358 F.2d 215, 223 (5th Cir. 1966) (holding that denial of preliminary injunction and filing of interlocutory appeal did not divest district court of jurisdiction over supplemental complaint) (quoting United States v. Lynd, 321 F.3d 26, 28 (5th Cir. 1963) ("[A]n appeal from the denial or granting of a preliminary injunction should not ordinarily delay the final trial of the case on its merits.")).

Additionally, Plaintiff's second notice of appeal similarly does not divest the Court of its jurisdiction over Plaintiff's complaint. An appeal taken, as here, from a non-appealable order, does not divest the district court of its jurisdiction over the matter. United States v. Hitchmon, 602 F.2d 689, 691 (5th Cir. 1979); see also United States v. Khoury, 901 F.2d 948, 969 n. 20 (11th Cir.1990).

assistance from persons trained in the law. (Id. at 5). Plaintiff claims that inmates assigned to administrative/punitive protective custody are not provided with access to the law library. (Id. at 5-6). As a result of being denied access to the law library and legal assistance, Plaintiff alleges that he was unable to prosecute an appeal that was dismissed for lack of prosecution. Additionally, Plaintiff also claims that as a result of being denied access to the law library and legal materials, a mandamus action he filed was dismissed, and he was unable to file any appeal concerning the dismissal.[5] (Id.).

Next, according to Plaintiff, he was transferred from Bostick State Prison ("BSP") to JSP because he was "labeled an informant or 'snitch' at BSP," and thus, he maintains that his life was in imminent danger "by the [general population] of prisoners." (Id. at 6). The basis of his claim is that he was placed in the general population of prisoners at JSP, and he was therefore exposed to an excessive risk of being seriously harmed.[6] (Id.). Notably, however, Plaintiff also claims deliberate indifference to a serious medical need because while at JSP, he was placed in administrative segregation, an allegedly punitive disciplinary segregation, rather than protective custody. (Id. at 6-7). Because he was in administrative segregation, his cane was confiscated, he was housed on the second floor, and he was forced to walk up and down stairs to go to the showers and/or receive medical treatment, without

---

[5]Plaintiff explains that the mandamus was dismissed for his failure to name the Commissioner of the GDOC as a defendant. (Doc. no. 28). Plaintiff argues that the only reason he failed to name the Commissioner as a defendant was because he was unable to do any research to determine the proper defendant for a mandamus action. (Id. at 6).

[6]Plaintiff does not identify the individual who allegedly assigned him to general population.

4

his cane.⁷ (Id. at 7). Plaintiff alleges that Defendant Jefferson required him to stand up for excessive periods of time waiting for Defendants Washington and Lawrence to complete their inspections. (Id.). Plaintiff further alleges that he suffered severe pain in his hip, back, and legs as a result of standing for prolonged periods of time. (Id.). Additionally, Plaintiff states that requiring him to walk up and down stairs without his cane was dangerous and exposed him to serious harm because he could have fallen down the stairs. Furthermore, Plaintiff states that because he was denied use of his cane, he went for weeks without a shower, as he could not safely navigate the stairs and had other mobility problems. (Id.).

Next, the Court turns to Plaintiff's conditions of confinement claims. Plaintiff alleges that Defendant Burton consistently subjected Plaintiff to extremely cold temperatures. (Id.). Plaintiff claims that during the winter, Defendant Burton would turn on fans and would require inmates – including Plaintiff – to take cold showers. (Id. at 8). According to Plaintiff, inmates were maliciously prohibited from wearing a winter jacket and were sadistically prohibited from using their blanket. (Id.). Thus, in order to stay warm, Plaintiff had to wear all of his clothing, but even then, on several occasions, his feet turned blue. (Id.).

Plaintiff indicates that he constantly complained to Defendants Washington and Lawrence, as well as wrote letters to Defendant Owens, about Defendant Burton's actions. (Id. at 8-9). However, Defendants Washington and Lawrence not only refused to stop Defendant Burton's conduct, but purportedly condoned Defendant Burton's conduct by

---

⁷Plaintiff states that when he arrived at JSP, he had several documented medical restrictions prescribed by the BSP physician. (Doc. no. 28, p. 6). For example, Plaintiff maintains that he had to walk with a cane, had mobility impairments, was not able to stand or walk for prolonged periods, had a bottom bunk profile, and was supposed to be housed on the first floor. (Id. at 7).

5

stating that the fans were used as they were intended. (Id. at 9). Furthermore, Plaintiff claims that all grievances, complaints, and letters about Defendant Burton were either denied or ignored. (Id.).

Next, turning to Plaintiff's other claims against Defendant Owens, Plaintiff alleges that Defendant Owens refused to enforce the Department of Corrections' policy which requires Georgia State prisons to provide access to the law library to inmates who are in "lock down." (Id.). Plaintiff also alleges in conclusory fashion, that Defendant Owens has adopted a policy of "deliberate and reckless disregard for Plaintiff's safety as a protective custody prisoner." (Id. at 12). According to Plaintiff, the Department of Corrections does not have an official policy or procedure to classify or protect Plaintiff from general population prisoners, thereby placing Plaintiff at risk for his safety.

Lastly, concerning the events forming the basis of Plaintiff's claims at JSP, he alleges that he was transferred from JSP to ASP in retaliation for his filing grievances and lawsuits concerning his alleged mis-treatment while incarcerated at JSP. (Id. at 10). Plaintiff maintains that he continued to be denied access to the courts, and continued to be treated with deliberate indifference to both his health and safety, while at ASP.

## II. DISCUSSION

### A. Claims Arising at ASP

Plaintiff's amended complaint and supplement detail allegations of events that occurred at ASP. However, ASP is located in Pelham, Mitchell County, Georgia. Mitchell County falls within the jurisdiction of the United States District Court for the Middle District of Georgia. See 28 U.S.C. § 90(b)(2). As the alleged denial of access to the courts and

deliberate indifference to his health and safety at ASP took place in the Middle District of Georgia, the proper venue for these claims is in that District. See 28 U.S.C. § 1391(b). Accordingly, Plaintiff's claims against Defendants Bruce Chatman, Marty Allen, and Jane Doe - the librarian - arising at ASP, should be dismissed without prejudice so that Plaintiff may, if he chooses, bring those claims in the United States District Court for the Middle District of Georgia.

### B. Claims for Deliberate Indifference to Safety

Plaintiff attempts to raise a claim for deliberate indifference to his safety by alleging that JSP subjected him to the general population of prisoners "knowing [he] was being exposed to an excessive risk of being seriously harmed by said [general population]." (Doc. no. 28, p. 6). First, Plaintiff only in conclusory fashion alleges that JSP placed him in the general population of prisoners. Moreover, contrary to Plaintiff's allegation that he was subjected to the general population of prisoners, the entirety of Plaintiff's deliberate indifference to his health claim is based on the fact that Plaintiff was assigned to protective custody and as a result was denied his cane and denied him the benefit of certain medical profiles he had previously been provided.[8]

Therefore, not only is Plaintiff's deliberate indifference to his safety claim refuted by his claim for deliberate indifference to his medical needs, but the claim is also vague and conclusory and therefore is not sufficient to state a claim. See Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984) (noting that vague and conclusory accusations are insufficient

---

[8] Indeed, Plaintiff acknowledges that he is being housed in administrative protective custody to protect him from the general population inmates. (Doc. no. 28, p. 10).

7

to state a civil rights claim). More importantly, concerning his claim for deliberate indifference to his safety, Plaintiff does not allege how any named Defendants' actions contributed to these claims. "Section 1983 requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." LaMarca v. Turner, 995 F.2d 1526, 1538 (11th Cir. 1993) (internal quotation marks and citations omitted). The Eleventh Circuit recently held, a district court properly dismisses defendants where a prisoner, other than naming the defendant in the caption of the complaint, fails to state any allegations that associate the defendants with the purported constitutional violation. Douglas v. Yates, 535 F.3d 1316, 1321-22 (11th Cir. 2008) (citing Pamel Corp. v. P.R. Highway Auth., 621 F.2d 33, 36 (1st Cir. 1980) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong.")). Here, Plaintiff has not alleged any action taken by a particular person with respect to his placement in the general population; he merely claims that he was placed in the general population of prisoners at JSP even though he was a known "snitch" and therefore he was placed at risk of being harmed. Thus, in the absence of an allegation of any connection between any actions of the named Defendants with the alleged unconstitutional deprivation, Plaintiff fails to state a claim for relief.

C.  **Claims Against Defendant Owens**

As to Plaintiff's claims against Defendant Owens, they fail as a matter of law. Plaintiff blames Defendant Owens for the acts of his subordinates within the Department of Corrections, without alleging any personal involvement by Defendant Owens in protecting

Plaintiff's safety and/or providing medical care, or concerning Plaintiff's conditions of confinement. However, "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 & 694 n.58 (1978). To hold a supervisory official or an employer liable, Plaintiff must demonstrate that either (1) the supervisor/employer actually participated in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor/employer and the alleged constitutional violation. Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). As noted above, Plaintiff has not alleged that Defendant Owens actually participated in his medical care or was personally responsible for his safety or general conditions of confinement at JSP. Although Plaintiff claims to have sent Defendant Owens letters concerning some of his alleged claims, he does not claim that Defendant Owens actually received the letters.[9] Thus there is no reason to suppose that this Defendant was even aware of any problem regarding Plaintiff's safety, medical needs, or conditions of confinement, much less that he was deliberately indifferent to Plaintiff's needs. Additionally, although Plaintiff claims that Defendant Owens refuses to enforce the GDOC

---

[9] Alleging that he sent Defendant Owens letters does not satisfy the burden of putting a supervisor on notice of a widespread problem or otherwise show that the supervisor was directly involved with Plaintiff's alleged claims. See Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (refusing to impose liability under § 1983 on supervisory official who denied administrative grievance and otherwise failed to act based on information contained in the grievance); Crowder v. Lash, 687 F.2d 996, 1005-06 (7th Cir. 1982) (rejecting claim that Commissioner of Department of Corrections could be held liable for damages from any constitutional violation at a facility within his jurisdiction based on receipt of a letter describing allegedly improper prison conditions).

policy which requires that prisoners be provided with access to the law library, there is no reason to suppose that Defendant Owens was even aware that some prisoners were purportedly being denied access to the law library.

Similarly, Plaintiff fails to allege a "causal connection" between Defendant Owens and the asserted constitutional violations. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (*per curiam*) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse[10] puts the responsible supervisor [or employer] on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's [or employer's] improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). Plaintiff has proffered no allegations to suggest that Defendant Owens knew about any widespread abuse or that he was responsible for a custom or policy which resulted in deliberate indifference to Plaintiff's safety and/or medical needs. To the extent Plaintiff claims that Defendant Owens's refusal to enforce the policy denies inmates in protective custody with access to the law library, his

---

[10]The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added).

argument fails. Indeed, Plaintiff has not shown evidence of any such policy, and as previously stated, Plaintiff has not shown Defendant Owens was even aware that any such improper conduct was occurring. In sum, Plaintiff has failed to state a claim upon which relief may be granted against Defendant Owens.

### D. Retaliation Claim

The Court turns next to Plaintiff's retaliation claim. Plaintiff alleges that in retaliation for his filing a lawsuit and grievances, he was transferred from JSP to ASP. Notably, however, Plaintiff does not indicate who was responsible for his transfer. Thus, Plaintiff does not allege how any named Defendants' actions contributed to this claim.

As previously stated, "Section 1983 requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." LaMarca, 995 F.2d at 1538. The Eleventh Circuit recently held, a district court properly dismisses defendants where a prisoner, other than naming the defendant in the caption of the complaint, fails to state any allegations that associate the defendants with the purported constitutional violation. Douglas, 535 F.3d at 1321-22. Here Plaintiff has not alleged any action taken by a particular person; he merely asserts that he was transferred from JSP to ASP in retaliation for filing a lawsuit and grievances. Thus, in the absence of an allegation of any connection between any actions of the named Defendants with the alleged unconstitutional deprivation, Plaintiff fails to state a claim for relief.

### E. Grievance Procedure Claims

To the extent Plaintiff alleges that his constitutional rights were violated by Defendants Washington and Lawrence because he believes that his grievances were denied or ignored, his claims must fail. "Procedural requirements alone do not create a substantive liberty interest, and mere violation of such procedures is not a constitutional violation." Rienholtz v. Campbell, 64 F. Supp.2d 721, 731 (W.D. Tenn. 1999), *aff'd*, 198 F.3d 247 (6th Cir. 1999) (Table); see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner. . . . A state-created prison grievance procedure is simply a procedural right and does not confer any substantive right upon an inmate."); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); Ouzts v. Cummins, 825 F.2d 1276, 1278 (8th Cir. 1987) (failure to respond to grievance does not constitute a due process violation); Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982) (failure to process plaintiff's grievances is not actionable under § 1983).

The Eleventh Circuit's decision in Wildberger v. Bracknell, 869 F.2d 1467 (11th Cir. 1989) (*per curiam*) is instructive on this point. In that case, the plaintiff alleged numerous claims, including a violation of "the grievance procedures established by the State Department of Corrections." Id. at 1467. Addressing the plaintiff's claims, the magistrate judge determined that the "violation of the grievance procedure did not rise to the level of a constitutional violation, since there was no entitlement to a grievance procedure under the Federal Constitution." Id. In the end, the magistrate judge determined that none of the

plaintiff's claims had merit. Id. at 1468. Although the Eleventh Circuit found error with the trial court's analysis of one of the plaintiff's retaliation claims, it found no error with the trial court's adoption of the magistrate judge's recommendation regarding the plaintiff's grievance claim. Id.

In this case, Plaintiff appears to blame Defendants Washington and Lawrence for the responses he received, or failed to receive, concerning his grievances. However, alleged misdeeds regarding grievance procedures do not give rise to stand-alone claims under § 1983. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (*per curiam*). "There is no right to a particular type of process in the handling of prison grievances. . . . [F]ederal courts simply do not sit as the ultimate appellate tribunal for prison grievance procedures." Rienholtz, 64 F. Supp.2d at 731. Therefore, Plaintiff's claims against Defendants Washington and Lawrence, regarding an alleged violation of the grievance procedures, fail as a matter of law.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Defendants Bruce Chatman, Marty Allen, and Jane Doe - the librarian - for claims arising at ASP, be **DISMISSED** from the case, that Defendant Owens be **DISMISSED**, and that Plaintiffs claims for deliberate indifference to his safety, retaliation, and grievance procedure,

be **DISMISSED**.[11]

SO REPORTED and RECOMMENDED this 30th day of November 2009, at Augusta, Georgia.

                               _W. Leon Barfield_
                               W. LEON BARFIELD
                               UNITED STATES MAGISTRATE JUDGE

---

[11] By separate Order, the Court has directed that service of process be effected on Defendants Washington and Lawrence based on Plaintiff's denial of access to the court claim, and Plaintiff's Eighth Amendment claim regarding deliberate indifference to his heath and general conditions of confinement claims against Defendants Jefferson and Burton.