ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

MICHAEL L. LARKIN, )
)
    Plaintiff, )
)
v. ) CV 309-024
)
ANTHONY WASHINGTON, )
Warden, et al., )
)
    Defendants. )

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, an inmate formerly incarcerated at Johnson State Prison ("JSP") located in Helena, Georgia, commenced the above-captioned case pursuant to 42 U.S.C. § 1983. Plaintiff is proceeding *pro se* and *in forma pauperis* ("IFP"). The matter is presently before the Court on Defendants' "Pre-Answer Motion to Dismiss." (Doc. no. 17). Plaintiff responded to Defendants' motion (doc. nos. 56, 63), and requested a hearing (doc. no. 57). Defendants filed a reply in support of their motion to dismiss and a response to Plaintiff's request for a hearing. (Doc. nos. 58, 59). For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Defendants' motion to dismiss be **GRANTED**, that Plaintiff's complaint be **DISMISSED** without prejudice, that Plaintiff's motion for hearing be **DENIED**, and that the case be **CLOSED**.

**I.    BACKGROUND**

Plaintiff signed his original complaint on March 9, 2009, and it was filed on March

13, 2009. (See doc. no. 1). The Court reviewed Plaintiff's original complaint in conformity with the *in forma pauperis* statute. Because of pleading deficiencies, Plaintiff was directed to file an amended complaint. (Doc. no. 11). However, rather than file an amended complaint pursuant to the Court's Order, Plaintiff filed various miscellaneous motions/documents that did not comply with the Court's Order. Thus, the Court provided Plaintiff with ten additional days to amend his complaint in accordance with the Court's Order. (Doc. no. 21). Plaintiff again submitted various miscellaneous motions/documents, and finally submitted his proposed amended complaint on September 9, 2009. (Doc. nos. 28).

The Court allowed Plaintiff to proceed with a claim of denial of access to the courts against Defendants Anthony Washington, the Warden at JSP, and Ronnie Lawrence, the Deputy Warden at JSP, an Eighth Amendment claim for deliberate indifference to his medical needs against Defendant Tracy Jefferson, a Captain at JSP, and a general conditions of confinement claim against Defendant Sylvester Burton.[1] (Doc. no. 41). According to Plaintiff, Defendants Washington and Lawrence denied him access to the law library for approximately seven months and denied him any assistance from persons trained in the law. (Id. at 5). Plaintiff claims that inmates assigned to administrative/punitive protective custody are not provided with access to the law library. (Id. at 5-6). As a result of being denied

---

[1]Plaintiff's amended complaint also raised claims against the Commissioner of the Georgia Department of Corrections and individuals who worked at Autry State Prison, concerning events that had occurred at that prison. (Doc. no. 28). Those claims and those Defendants were dismissed by the presiding District Judge. (Doc. no. 62). Accordingly, for purposes of Defendants' motion to dismiss, the Court will only address the facts pertinent to Plaintiff's claims against the remaining four Defendants.

2

access to the law library and legal assistance, Plaintiff alleges that he was unable to pursue an appeal that was dismissed for lack of prosecution. Additionally, Plaintiff also claims that as a result of being denied access to the law library and legal materials, a mandamus action he filed was dismissed, and he was unable to file any appeal concerning the dismissal.[2] (Id.).

Next, Plaintiff claims that while he was in administrative segregation at JSP,[3] (1) his cane was confiscated, (2) he was housed on the second floor, and (3) he was forced to walk up and down stairs to go to the showers and/or receive medical treatment, without his cane.[4] (Id. at 6-7). Plaintiff alleges that Defendant Jefferson required him to stand up for excessive periods of time waiting for Defendants Washington and Lawrence to complete their inspections. (Id.). Plaintiff further alleges that he suffered severe pain in his hip, back, and legs as a result of standing for prolonged periods of time. (Id.). Additionally, Plaintiff states that requiring him to walk up and down stairs without his cane was dangerous and exposed him to serious harm because he could have fallen down the stairs. Furthermore, Plaintiff states that because he was denied use of his cane, he went for weeks without a shower, as he could not safely navigate the stairs and had other mobility problems. (Id.).

---

[2] Plaintiff explains that the mandamus was dismissed for his failure to name the Commissioner of the GDOC as a defendant. (Doc. no. 28). Plaintiff argues that the only reason he failed to name the Commissioner as a defendant was because he was unable to do any research to determine the proper defendant for a mandamus action. (Id. at 6).

[3] Plaintiff had requested an assignment in protective custody because of his "snitch" status. (Doc. no. 28).

[4] Plaintiff states that when he arrived at JSP, he had several documented medical restrictions prescribed by the Bostick State Prison physician. (Doc. no. 28, p. 6). For example, Plaintiff maintains that he had to walk with a cane, had mobility impairments, was not able to stand or walk for prolonged periods, had a bottom bunk profile, and was supposed to be housed on the first floor. (Id. at 7).

3

Next, the Court turns to Plaintiff's conditions of confinement claim. Plaintiff alleges that Defendant Burton consistently subjected Plaintiff to extremely cold temperatures. (Id.). Plaintiff claims that during the winter, Defendant Burton would turn on fans and would require inmates – including Plaintiff – to take cold showers. (Id. at 8). According to Plaintiff, inmates were prohibited from wearing a winter jacket and were prohibited from using their blanket. (Id.). Thus, in order to stay warm, Plaintiff had to wear all of his clothing, but even then, on several occasions, his feet turned blue. (Id.).

Plaintiff indicates that he constantly complained to Defendants Washington and Lawrence, as well as wrote letters to the Commissioner of the Georgia Department of Corrections, about Defendant Burton's actions. (Id. at 8-9). However, Defendants Washington and Lawrence not only refused to stop Defendant Burton's conduct, but purportedly condoned Defendant Burton's conduct by stating that the fans were used as they were intended. (Id. at 9). Furthermore, Plaintiff claims that all grievances, complaints, and letters about Defendant Burton were either denied or ignored. (Id.).

Defendants now seeks to dismiss Plaintiff's amended complaint for Plaintiff's failure to exhaust his administrative remedies and for failure to state a claim upon which relief can be granted. (See generally doc. no. 53). Plaintiff alleges that he did exhaust his administrative remedies and has alleged viable claims against Defendants. (Doc. nos. 56, 63).

## II. DISCUSSION

### A. Applicable Legal Standard for Exhaustion

Where a defendant has filed a motion to dismiss based on failure to exhaust

administrative remedies, as Defendants have here, the Eleventh Circuit has laid out a two-step process for courts to use in resolving such motions.

> First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.
>
> . . . .
>
> If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues. . . . The defendants bear the burden of proving that the plaintiff has failed to exhaust his administrative remedies. . . . Once the court makes findings on the disputed issues of fact, it then decides whether under those findings, the prisoner has exhausted his available administrative remedies.

Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (citations omitted), *cert. denied*, 129 S. Ct. 733 (2008)). Where exhaustion "is treated as a matter of abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 (citations omitted).

### B.     The Administrative Grievance Process

Within the Georgia Department of Corrections, the administrative grievance process is governed by SOP IIB05-0001. Once an inmate has unsuccessfully attempted to resolve a complaint through discussion with the staff involved, the administrative remedies procedure commences with the filing of an informal grievance. SOP IIB05-0001 § VI(B). The inmate has ten (10) calendar days from "the date the offender knew, or should have known, of the

5

facts giving rise to the grievance" to file the informal grievance. Id. § VI(B)(5). The timeliness requirements of the administrative process may be waived upon a showing of good cause. See id. § VI(C)(2) & (D). The SOP requires that an inmate be given a response to his informal grievance within 10 calendar days of its receipt by the inmate's counselor; the informal grievance procedure must be completed before the inmate will be issued a formal grievance. Id. § VI(B)(12)-(13).

If unsatisfied with the resolution of his informal grievance, an inmate must complete a formal grievance form and return it to his counselor within five (5) business days of his receipt of the written resolution of his informal grievance. Id. § VI(C)(2). Once the formal grievance is given to the counselor, the Warden/Superintendent has thirty (30) calendar days to respond. Id. § VI(C)(14). If the inmate is not satisfied with the Warden's response to the formal grievance, he has 5 business days from the receipt of the response to file an appeal to the Office of the Commissioner; the Office of the Commissioner or his designee then has ninety (90) calendar days after receipt of the grievance appeal to respond. Id. § VI(D)(2),(5). The grievance procedure is terminated upon the issuance of a response from the Commissioner's Office. Id.

### C. Failure to Exhaust Administrative Remedies

As noted above, the Court allowed Plaintiff to proceed with a claim of denial of access to the courts against Defendants Washington and Lawrence, an Eighth Amendment claim for deliberate indifference to his heath against Defendant Jefferson, and a general conditions of confinement claim against Defendant Burton. Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this

title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Prison Litigation Reform Act's ("PLRA") mandatory exhaustion requirement applies to all federal claims brought by any inmate. Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998).

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 92 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90-91 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005), *cert. denied*, 548 U.S. 925 (2006). Put plainly, "a Georgia prisoner 'must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures.'" Salas v. Tillman, 162 Fed. App'x 918, 920 (11th Cir. Jan. 17, 2006) (quoting Johnson, 418 F.3d at 1155).

Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, an inmate must complete the administrative process *before* initiating suit. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (*per curiam*); see also Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999). Under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective."

Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

Following the Burnside test set forth *supra*, the Court first looks to Defendants' factual allegations. See Burnside, 541 F.3d at 1082-83. Defendants contend that Plaintiff failed to properly exhaust administrative remedies concerning all of his claims prior to his commencing the above-captioned case. (Doc. no. 53, pp. 4-7). Defendants state Plaintiff was assigned to JSP from August 29, 2008 to March 24, 2009. (Doc. no. 53, p. 7 and Ex. C (Morris Aff.), ¶ 15). During that time, Plaintiff filed two formal grievances. (Id. at 7 and Morris Aff. ¶ 15). The first formal grievance filed by Plaintiff did not address any of his alleged claims in this case, and the other, although based on the claim he alleged against Defendant Burton regarding the conditions of confinement, was not exhausted until after he had initiated this case. (Id. at 6-7).

Here, the evidence supports Defendants' arguments. While incarcerated at JSP, Plaintiff filed two formal grievances. (Id., Morris Aff. ¶ 13). On September 23, 2008, Plaintiff filed formal grievance number 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, and on February 2, 2009, Plaintiff filed formal grievance number 5000. (Id., Morris Aff. ¶¶ 14, 15 and Exs. B, C). In formal grievance number 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 Plaintiff complains that his legal books and papers were ruined when his cell became flooded.[5] (Id., Morris Aff. ¶ 14 and Ex. B). Plaintiff exhausted his administrative remedies concerning this grievance. (Id., Morris Aff. ¶ 14 and Ex. B).

---

[5]It was determined that an inmate in another cell caused the flooding when he broke the sprinkler in that cell. (Doc. no. 53, Ex. B).

8

However, the issues related to the cell flooding, the basis of Plaintiff's formal grievance 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, are not related to any of the claims pending in this matter, or any of the four remaining Defendants in this case.

Concerning formal grievance number 5000, Plaintiff complained that Defendant Burton subjected him to very cold temperatures. (Id., Morris Aff. ¶ 15 and Ex. C). Although the basis of this grievance is the subject of the claim that Plaintiff has asserted against Defendant Burton, Plaintiff did not complete the exhaustion procedure concerning this grievance until after he had commenced this case. Specifically, the administrative procedures for formal grievance 5000 were not completed until April 16, 2009 (id., Morris Aff. ¶ 15 and Ex. C), over one month after Plaintiff had commenced this case in March 2009. Although Plaintiff argues that he amended his complaint to include the allegation against Defendant Burton after he had completed the exhaustion procedure as to that claim, exhaustion of administrative remedies is a "precondition" to filing an action in federal court, and Plaintiff had to complete the administrative process *before initiating this suit*.[6]

Additionally, the record is devoid of any grievances concerning Plaintiff's claim of denial of access to the courts against Defendants Washington and Lawrence or Plaintiff's claim concerning deliberate indifference to his health against Defendant Jefferson. Plaintiff argues that the record submitted by Defendants is incomplete because he is aware of at least ten grievances that he filed that were not provided by Defendants with their motion to dismiss. (Doc. no. 56, p. 1). Notably, however, Plaintiff does not provide the Court, despite

---

[6]It should also be noted that, even though the Court directed Plaintiff to amend his complaint to cure his pleading deficiencies, this direction did not authorize Plaintiff to bring an improper claim.

being given an extension of time to respond to Defendants' motion, with any such grievance number or receipt that he filed any such grievance.[7] Plaintiff further alleges that he was never provided an explanation of the grievance procedure and was never provided with a copy of the handbook explaining the procedures. (Id. at 2). Plaintiff's argument of course is undermined by the fact that he was sufficiently aware of the exhaustion procedure to complete the process for at least two grievances. (See doc. no. 53, Exs. B, C).

Next, Plaintiff states that even if the Court were to conclude that he had failed to exhaust his administrative remedies, his case should not be dismissed until he has the opportunity to conduct discovery. (Id. at 2-3). Plaintiff's argument misses the mark. As previously stated, the Court does not have discretion to waive the exhaustion requirement, even if it can be shown that the grievance process is futile or inadequate. Alexander, 159 F.3d at 1325-26. Furthermore, importantly, when Plaintiff was given an extension of time to respond to Defendants' motion to dismiss, he was also provided until and including April, 2, 2010, within which to proceed with discovery as to exhaustion issues.[8] (Doc. no. 61).

---

[7]Both informal and formal grievances have a detachable receipt. (Doc. no. 53, Morris Aff. ¶¶ 6, 8). At the time an inmate submits the grievance, the receipt portion is detached and given to the inmate. (Id., Morris Aff. ¶¶ 6, 8). Each receipt contains the inmate's name, identification number, and the date the inmate submitted the grievance form. (Id., Morris Aff. ¶¶ 6, 8). Furthermore, at the time a formal grievance is filed with the inmate's counselor, the formal grievance is logged into the "Grievance Management System Database." (Id., Morris Aff. ¶ 8).

[8]Additionally, although Plaintiff asked for an evidentiary hearing (doc. no. 57), based on the filings, the Court finds no reason for holding one. Indeed, Plaintiff was warned that when responding to a motion to dismiss based on exhaustion of administrative remedies, he cannot rely on the pleadings alone. In cases such as this one, where Defendants have submitted several exhibits, including an affidavit, in support of their motion to dismiss, Plaintiff must be given the opportunity to develop the record. (Doc. no. 61 (citing Bryant v. Rich, 530 F.3d 1368, 1374-75 (11th Cir. 2008) (citations omitted), cert. denied, 129 S. Ct.

Accordingly, Plaintiff has failed to exhaust his administrative remedies as to his claims against Defendants Washington, Lawrence, and Jefferson.

As such, the record reflects that Plaintiff failed to properly exhaust his administrative procedure concerning any of the claims he raised against any of the remaining Defendants. Therefore, Defendants' motion to dismiss should be **GRANTED**.[9]

### III. CONCLUSION

Accordingly, for the reasons stated above, the Court **REPORTS** and **RECOMMENDS** that Defendants' motion to dismiss (doc. no. 53) be **GRANTED**, that Plaintiff's complaint be **DISMISSED** without prejudice, that Plaintiff's motion for hearing be **DENIED**, and that the case be **CLOSED**.

SO REPORTED and RECOMMENDED this 25th day of May, 2010, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

733 (2008)). As such, Plaintiff was given the opportunity to develop the record in conjunction with his response to the motion to dismiss by submitting his own affidavits or other evidence contradicting Defendants' submissions. (Id.). Plaintiff failed to do so. As the record reflects that Plaintiff has not exhausted his administrative remedies, his case should be dismissed, and there is no reason to hold an evidentiary hearing. Indeed, Plaintiff would not need an evidentiary hearing to obtain his own affidavits and grievance receipts that were or should have been in his possession. Accordingly, Plaintiff's motion for a hearing should be **DENIED**.

[9]The Court's conclusion in this regard pretermits consideration of Defendants' remaining arguments.

11